# United States Court of Appeals

*for the*

# Third Circuit

———————————

Case No. 26-1312

———————————

IN RE CROSS-HOLDER AD HOC GROUP and
EXCLUDED FIRST LIEN LENDERS,

*Petitioners.*

———————————

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY,
IN NO. 26-10910-MBK, HON. MICHAEL B. KAPLAN

## BRIEF OF THE SECURED AD HOC GROUP IN RESPONSE TO PETITION FOR A WRIT OF MANDAMUS

block

Matthew E. Beck
  *Counsel of Record*
Thomas M. Walsh
Sam Della Fera, Jr.
**CHIESA, SHAHINIAN
  & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, NJ 07068
(973) 325-1500
mbeck@csglaw.com
twalsh@csglaw.com
sdellafera@csglaw.com

Evan R. Fleck
Matthew Brod
Alexander B. Lees
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
(212) 530-5000
efleck@milbank.com
mbrod@milbank.com
alees@milbank.com

Colleen E. Roh Sinzdak
Melanie Westover Yanez
Hannah A. Blazek
**MILBANK LLP**
1101 New York Avenue, NW
Washington, DC 20005
(202) 835-7500
crohsinzdak@milbank.com
mwyanez@milbank.com
hblazek@milbank.com

*February 20, 2026*                    *Counsel for the Secured Ad Hoc Group*



## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Rule 26.1, Respondent the Secured Ad Hoc Group disclose as follows:

Respondent Anchorage Capital Advisors, L.P. is a subsidiary of Anchorage Capital Group, L.L.C.  No publicly held corporation directly owns 10% or more of Anchorage Capital Advisors, L.P.'s equity.  No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Apollo Capital Management, L.P. is an indirect subsidiary of Apollo Global Management, Inc., a publicly held corporation which indirectly owns 10% or more of Apollo Capital Management, L.P.'s equity.  No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Ares Management LLC is an indirect subsidiary of Ares Management Corporation, a publicly held corporation.  No publicly held corporation directly owns 10% or more of Ares Management LLC's equity.   No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Arini Capital Management Limited is a subsidiary of Arini Capital Management Asset Holdco (Jersey) Limited.  No publicly held corporation directly owns 10% or more of Arini Capital Management Limited's equity.  No

publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Benefit Street Partners L.L.C. is a direct subsidiary of Franklin Resources, Inc., a publicly held corporation which owns 10% or more of Benefit Street Partners L.L.C.'s equity.  No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent BlackRock Financial Management, Inc. is a consolidated subsidiary of BlackRock, Inc.  BlackRock, Inc. is a publicly held corporation that owns 10% or more of the equity of BlackRock Financial Management, Inc.  No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent J.P. Morgan Investment Management Inc. is an indirect subsidiary of JP Morgan Chase & Co., a publicly held corporation which indirectly owns 10% or more of J.P. Morgan Investment Management, Inc.'s equity. Respondent JPMorgan Chase Bank, N.A. is a direct subsidiary of JPMorgan Chase & Co., a publicly held corporation which owns 10% or more of JP Morgan Chase Bank, N.A.'s equity.  No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent KKR Credit Advisors (US) LLC is a subsidiary of KKR Credit Holdco LLC.  KKR & Co., Inc. is a publicly held corporation which indirectly owns

10% or more of KKR Credit Advisors (US) LLC's equity.  No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Lord, Abbett & Co. LLC has no parent and no publicly held corporation directly owns 10% or more of its equity.  No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Principal Global Investors, LLC is a subsidiary of Principal Global Investors Holding Company (US), LLC.  Principal Financial Group, Inc., a publicly held corporation, indirectly owns 10% or more of Principal Global Investors, LLC's equity.  No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respectfully submitted,

Dated: February 20, 2026

*/s/ Matthew E. Beck*
Matthew E. Beck
Thomas M. Walsh
Sam Della Fera, Jr.
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 325-1500
mbeck@csglaw.com
twalsh@csglaw.com
sdellafera@csglaw.com

Evan R. Fleck
Matthew Brod
Alexander B. Lees
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
(212) 530-5000
efleck@milbank.com
mbrod@milbank.com
alees@milbank.com

Colleen E. Roh Sinzdak
Melanie Westover Yanez
Hannah A. Blazek
**MILBANK LLP**
1101 New York Avenue, NW
Washington, DC 20005
(202) 835-7500
crohsinzdak@milbank.com
mwyanez@milbank.com
hblazek@milbank.com

*Counsel for the Secured Ad Hoc Group*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................vi

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................4

ARGUMENT ..................................................................................................8

I.     There was no abuse of discretion or error of law, let alone a clear and indisputable one ....................................................................9

     A.    The bankruptcy court's preliminary finding of proper venue was supported by the record .............................................9

     B.    The bankruptcy court was not required to cease all proceedings before making a final venue determination ..........11

     C.    Section 364(e) of the Bankruptcy Code protects the DIP financing from vacatur ....................................................15

II.    Adequate alternative remedies exist.......................................................17

III.   Petitioners cannot demonstrate irreparable injury ..............................20

IV.   The Court should exercise its discretion to deny the petition .............22

CONCLUSION ..............................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3M Co.*,
  2020 WL 13924735 (3d Cir. Nov. 18, 2020) ....................................................20

*In re 700 Trust*,
  No. 24-10230 (Bankr. N.D. Fla. Nov. 8, 2024)..............................................13

*In re Abbott Lab'ys*,
  96 F.4th 371 (3d Cir. 2024) ...........................................................8, 9, 22

*In re Apple Inc.*,
  2023 WL 2359699 (Fed. Cir. Mar. 6, 2023)......................................................18

*In re Boy Scouts of Am.*,
  137 F.4th 126 (3d Cir. 2025) ..............................................................17

*In re Briscoe*,
  448 F. 3d 201 (3d Cir. 2006) ...................................................... 17, 18

*In re Broadcom Corp.*,
  526 F. App'x 960 (Fed. Cir. 2013) ..................................................10

*In re Caesars Ent. Operating Co., Inc.*,
  2015 WL 495259 (Bankr. D. Del. Feb. 2, 2015)......................................... 12-13

*In re Chamber of Commerce*,
  105 F.4th 297 (5th Cir. 2024) .............................................................20

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004)........................................................................8

*Czyzewski v. Jevic Holding Corp.*,
  580 U.S. 451 (2017)...................................................................11, 12

*Dawsey v. Gov't of Virgin Islands*,
  931 F. Supp. 397 (D.V.I. 1996), *aff'd*, 106 F.3d 384 (3d Cir. 1996) ...........20-21

*Def. Distributed v. Att'y Gen.*,
No. 23-3058, 2026 WL 394269 (3d Cir. Feb. 12, 2026) ....................................19

*In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine)*
*Prods. Liab. Litig.*,
418 F.3d 372 (3d Cir. 2005) ................................................................17

*Dunnigan v. Silverthorn*,
542 F. Supp. 32 (E.D. Pa. 1982) .........................................................14

*George v. Rushmore Serv. Ctr., LLC*,
114 F.4th 226 (3d Cir. 2024) ..............................................................14

*In re Hall*,
988 F.3d 376 (7th Cir. 2021) ...............................................................20

*Hayman Cash Register Co. v. Sarokin*,
669 F.2d 162 (3d Cir. 1982) ...........................................................3, 14

*In re Houghton Mifflin Harcourt Publishing Co.*,
474 B.R. 122 (Bankr. S.D.N.Y. 2012).............................................12, 13

*In re Kensington Int'l Ltd.*,
353 F.3d 211 (3d Cir. 2003) ................................................................19

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*,
908 F.2d 1351 (7th Cir. 1990) ........................................................16, 17

*Lauro Lines s.r.l. v. Chasser*,
490 U.S. 495 (1989).............................................................................19

*In re LTL Mgmt.*,
LLC, 636 B.R. 610 (Bankr. D.N.J. 2022)...........................................15

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
909 F.3d 48 (3d Cir. 2018) ..................................................................10

*In re Media Matters for America*,
143 F.4th 631 (5th Cir. 2025) .............................................................18

*Myers v. American Dental Ass'n*,
695 F.2d 716 (3d Cir. 1982) ................................................................14

*In re N. Atl. Millwork Corp.*,
   155 B.R. 271 (Bankr. D. Mass. 1993) ...............................................17

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*,
   308 U.S. 165 (1939) ............................................................................13

*In re Pharmacy Benefit Managers Antitrust Litig.*,
   582 F.3d 432 (3d Cir. 2009) ......................................................... 14-15

*Polymer80, Inc. v. Garland*,
   2023 WL 3605430 (N.D. Tex. Mar. 19, 2023)..................................12

*In re Ryze Claims Solutions, LLC*,
   968 F.3d 701 (7th Cir. 2020) ............................................................20

*In re Semcrude, L.P.*,
   728 F.3d 314 (3d Cir. 2013) ..............................................................16

*Smith v. Konsak*,
   230 F. Supp. 308 (E.D. Pa. 1964) .....................................................14

*In re Swedeland Dev. Grp., Inc.*,
   16 F.3d 552 (3d Cir. 1994) ................................................................16

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   581 U.S. 258 (2017).............................................................................20

*In re Thompson*,
   No. 04-29553 (Bankr. W.D. Tenn. June 21, 2004) ...........................13

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ..............................................................20

*U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*,
   487 U.S. 72 (1988)...............................................................................14

*U.S. Rubber Co. v. Frankel*,
   1966 WL 7659 (2d Cir. 1966) ...........................................................19

**Statutes**

11 U.S.C. § 364(e) ..................................................................3, 15, 16

**Other Authorities**

13 Wright & Miller's Federal Practice and Procedure § 3522 (3d ed. Sep. 2025 update) ................................................................................14

The ad hoc group of secured first lien lenders and noteholders (the "Secured Ad Hoc Group"), by and through its undersigned counsel, hereby submits this Memorandum in Opposition to the Petition for Writ of Mandamus filed by the self-titled Cross-Holder Ad Hoc Group and the purported Excluded First Lien Lenders.

## INTRODUCTION

Petitioners open their petition with an analogy to a misbehaving district court that has nothing to do with this bankruptcy case. The Secured Ad Hoc Group therefore begins its response with a more apt hypothetical: Imagine a company teetering on the edge of collapse files for bankruptcy protection in District of State A. Its chief financial officer signs a verified petition under penalty of perjury attesting that venue is proper in State A. A group of sophisticated creditors asserts that venue is lacking based on a blank space elsewhere in the same petition. But counsel for the debtor confirms on the record that venue *is* proper because the company maintains bank accounts in State A containing the company's principal assets, and counsel offers to put a witness on the stand to testify accordingly in support of venue. The bankruptcy court, faced with a company that will run out of cash in days and a venue dispute that will require additional factfinding, makes a preliminary determination that venue is proper and enters its "first-day orders"—the emergency orders that bankruptcy courts routinely issue at the outset of a case to keep a debtor's lights on, pay its employees, and prevent liquidation. At the same time, the bankruptcy court

schedules an evidentiary hearing in mere weeks to resolve the venue dispute definitively with the benefit of a full record and evidence.

Now imagine the group of sophisticated creditors is dissatisfied with the debtor-in-possession (DIP) financing the bankruptcy court approved in its first-day orders and believes that—if the case were transferred to the creditors' favored district—they might get first-day orders more to their liking. The creditors don't want to wait for the bankruptcy court to make a final determination on venue based on a fully developed factual record, so they decide to seek the extraordinary relief of mandamus. Granting mandamus in those circumstances would plainly be inappropriate.

*That* is the present dispute. Not one really about venue, prejudice, or even inconvenience, but one about a few disgruntled creditors who are dissatisfied with the first-day orders the bankruptcy court issued and are therefore trying everything to derail a restructuring that the Debtors determined, in the exercise of their business judgment, offers the best path forward for all stakeholders, and that a substantial majority of creditors supports.

That effort is manifestly improper. Mandamus is extraordinary relief that is available only in the exceedingly narrow circumstances when a court makes a clear and undisputable error with respect to venue. There is nothing clearly erroneous about the bankruptcy court's decision to accept the Debtors' sworn attestation and

counsel's on-the-record confirmation that venue is proper for the purposes of issuing necessary emergency orders at the outset of the case, particularly because the bankruptcy court simultaneously scheduled an evidentiary hearing to make a final determination on venue just weeks later. Petitioners have not pointed to a single case that condemns such a procedure. And there are countless analogous cases affirming a court's ability to handle venue in this way, particularly in the bankruptcy context.

Moreover, the petition for mandamus appears to rest on the erroneous premise that if this Court determines that the bankruptcy court's preliminary venue determination was mistaken, then all of the bankruptcy court's prior orders— including its first-day orders—are necessarily invalid. But that is simply wrong. When lower court proceedings are still ongoing, the remedy for a finding of improper venue is transfer or dismissal, not vacatur of previously issued orders. This Court has squarely held that after transfer for lack of venue, the law of the case doctrine applies to the orders of the transferor court—even when those pre-transfer orders concerned the propriety of the transfer itself. *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169–70 (3d Cir. 1982). And Petitioners' effort to vacate approval of the DIP financing through a venue challenge is particularly inappropriate because it represents a transparent attempt to circumvent 11 U.S.C. § 364(e), which provides special statutory protection against appellate invalidation of such orders.

For these reasons, Petitioners do not even begin to satisfy the requirements for mandamus relief. The petition should be denied.

## BACKGROUND

On January 29, 2026, Debtor MCC Norwood filed a voluntary petition for chapter 11 bankruptcy protection. The form of petition asked the Debtor to indicate the location of its principal place of business and, if a different location, the principal place of its assets. The Debtor indicated that MCC Norwood's principal place of business is Georgia and neglected to fill in information about the principal place of assets, which apparently prompted Petitioners to assume that the principal place of assets must be in Georgia too. But elsewhere in the petition, the Debtor expressly indicated that it was filing its bankruptcy petition in the District of New Jersey because "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition," thus establishing the factual predicate for laying venue. A.II.A145.[1]

As is customary, the Debtors then filed petitions for a number of affiliates, relying on 28 U.S.C. § 1408(2), which provides venue is proper where there is an existing chapter 11 case pending for an affiliate. Finally, the Debtors also filed a number of emergency motions seeking immediate relief. These first-day motions are

---

[1]   Citations to "A.[X].[XXXX]" are to the Appendix of Petitioners, filed at Docket Nos. 1-4, 1-5.  The two numbers refer to the volume of the appendix and the page, respectively.

designed to fund the operations of the Debtors' business during the chapter 11 cases, allowing it to pay employee wages, utilities, insurance, critical vendors, and other critical needs of the company to allow it to remain a viable business. Among the first-day motions was a request for approval to incur post-petition financing and accompanying liens, which the Debtors desperately needed because they were on the verge of running out of cash.

Just before the first-day hearing began, Petitioners filed a motion to transfer venue or dismiss the cases. At the hearing, the Debtors' counsel explained that "the basis for venue is valid in this case. MCC Norwood, the entity that [Petitioners] mentioned, has only one asset of any value, and that is two bank accounts that are held at ConnectOne Bank, which is a bank located in New Jersey. And those banks are funded with cash and also are the banks that we expect to use as our adequate assurance account for the purpose of the utility motion in these cases. We're happy to put on testimony to that effect from Mr. Koza, Your Honor, if it would be helpful. But on that basis alone, we believe we've met the principal assets test [for venue]." A.II.A216:6-16.

The bankruptcy court ultimately decided to defer final adjudication of the motion to dismiss or transfer until it could hold an evidentiary hearing. Nevertheless, the court made an "initial finding of proper venue," based on the record the court had before it, including a petition signed under penalty of perjury in which the

authorized representative of MCC Norwood swore that venue was proper and representations by counsel that venue was based on New Jersey being the principal place of MCC Norwood's assets. A.II.A538:16-20; A541:4-13. The bankruptcy court also made plain that it was allowing the parties to undertake discovery—an approach supported by counsel to the Petitioners, who saw a need for the court to "see exhibits" and "establish a factual record" (A.II.A217:1-11)—and properly brief venue before revisiting the issue at a hearing on February 26, 2026.[2]

At the first-day hearing, which was conducted by video conference, Petitioners vigorously challenged the Debtors' motion for approval of the DIP financing. They spent hours cross-examining the Debtors' witnesses and made a lengthy oral argument, complete with a polished slide presentation. A.II.A210-212; A237-240; A251-A304; A316-A346; A536:14-A537:7. Among their central arguments was that they had offered a competing DIP facility that, in their view, was more favorable to the Debtors. A.II.A319:3-11; A340:7-13. In their competing financing proposal, Petitioners stipulated that venue was proper in the District of New Jersey and that the bankruptcy court had jurisdiction to approve it. They further included in their commitment letter that they "irrevocably and unconditionally agree[d] that all claims in respect of the Chapter 11 Cases may be heard in the

---

[2]    The venue hearing was initially set for February 25, but has since been adjourned one day to February 26, 2026. Bankr. Dkt. No. 277.

Bankruptcy Court" in New Jersey, and that they "waive[d] any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in any inconvenient forum." Bankr. Dkt. No. 78, Ex. 1 (Backstop Letter, dated as of January 30, 2026). In other words, Petitioners made clear that they had no objection to laying venue in New Jersey if their competing DIP proposal were accepted and presented to the bankruptcy court there.

After nearly six hours of evidence and argument, the bankruptcy court overruled Petitioners' objections. It credited the Debtors' witnesses that the DIP financing was urgently needed, and that the Debtors would run out of cash within days if they did not receive an immediate influx of capital. A.II.A373:3-8. The court approved the DIP financing on an interim basis in the amount of $45 million, and it ordered a continued hearing (again by video conference) the next business day. A.II.A368-374. Petitioners attended the continued hearing and participated in the further proceedings, during which the bankruptcy court approved aggregate DIP financing on an interim basis in the amount of $125 million. A.II.A417-A420; A426-A427. The DIP lenders then extended this amount of post-petition secured credit to the Debtors. In the interim order approving the DIP financing and accompanying liens, the bankruptcy court found that the lenders were acting in good faith, which Petitioners never challenged. A.I.A26. The bankruptcy court scheduled a hearing for

approval of the DIP financing on a final basis for March 3, 2026, after the scheduled hearing to make a final determination about venue. Petitioners did not seek a stay of the interim DIP financing order pending appeal.

Meanwhile, Petitioners have continued to litigate actively in the chapter 11 cases. They commenced an adversary proceeding in the bankruptcy court to determine the allowed amount of secured creditors' claims. *See Cross-Holder Ad Hoc Group v. Barclays Bank PLC*, Adv. Pro. No. 26-01041-MBK. They have served extensive discovery requests on numerous parties in service of their forthcoming objections to plan confirmation and the DIP motion. So, too, have Petitioners engaged in discovery in relation to the venue dispute, seeking documents from the Debtors and multiple depositions of Debtor witnesses on this subject.

## ARGUMENT

A writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quotations omitted). In the Third Circuit, three conditions must be met before mandamus may be granted: "(1) a clear and indisputable abuse of discretion or error of law, (2) a lack of an alternate avenue for adequate relief, and (3) a likelihood of irreparable injury." *In re Abbott Lab'ys*, 96 F.4th 371, 379 (3d Cir. 2024) (citing *In*

*re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017)). Petitioners do not and cannot meet this standard.

## I.    There was no abuse of discretion or error of law, let alone a clear and indisputable one.

The first prerequisite for mandamus relief, a clear and indisputable abuse of discretion or error, is a "high bar" established by the Supreme Court. *Id.* at 379. Petitioners do not clear this difficult hurdle. The bankruptcy court, faced with a debtor that needed immediate relief if it was to have any hope of reorganizing successfully in chapter 11, made an interim factual finding of proper venue at the start of the case, based on a verified petition signed under penalty of perjury and representations of counsel. It then entered routine first-day relief while scheduling a prompt evidentiary hearing on venue. A.II.A537-38. Contrary to Petitioners' assertions, the bankruptcy court has not "disregard[ed]" venue or its duty to transfer or dismiss a case filed in an improper venue. The bankruptcy court has treated this duty with the utmost seriousness, ensuring that it gets its venue determination correct, following full briefing and the development of a robust evidentiary record.

### A.    The bankruptcy court's preliminary finding of proper venue was supported by the record.

Petitioners assert that the face of MCC Norwood's bankruptcy petition establishes conclusively that venue in New Jersey is improper because the petition left blank the line indicating that the principal place of assets differed from the

9

principal place of business. But Petitioners' assertion ignores the rest of the petition, in which MCC Norwood's authorized signatory swore under penalty of perjury that the petition satisfied the venue requirements of the Bankruptcy Code, including because the principal place of its assets is New Jersey. A.II.A146.

Thus, the petition on its face, does not *establish* venue is improper. At worst, it creates an arguable ambiguity because one of the places where MCC Norwood was required to identify the principal place of its assets was left blank. The bankruptcy court then weighed the information before it, together with the representation of the Debtors' counsel that venue was proper because MCC Norwood's principal assets (bank accounts) are in New Jersey, to make a preliminary finding that venue was proper. Such a ruling is unremarkable and certainly not a clear abuse of discretion. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57, 70-71 (3d Cir. 2018) (requiring more than that "the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion" to warrant mandamus and holding that even though one district court erred in transferring venue, this was not enough to warrant mandamus); *see also In re Broadcom Corp.*, 526 F. App'x 960, 965 (Fed. Cir. 2013) (holding that district court's factual findings that led it to deny a motion to transfer did not amount to clear abuse of discretion appropriate for a writ of mandamus).

**B.    The bankruptcy court was not required to cease all proceedings before making a final venue determination.**

Nor was it a clear abuse of discretion for the bankruptcy court to grant emergency relief before making a final determination about venue. In a complex chapter 11 case, it is imperative for a court to grant numerous motions as part of a first-day hearing. The first-day motions seek critical relief, necessary to allow the debtor to continue operations uninterrupted. A.II.A218:12-17. This benefits all stakeholders, even objecting creditors, because without this emergency relief, a debtor may face immediate and irreparable harm. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (first-day relief is justified because "the distributions at issue would enable a successful reorganization and make even the disfavored creditors better off" (quotation omitted)).

The fourteen motions that the bankruptcy court granted here included: an *interim* order approving the DIP Financing (that Petitioners want to undo at all costs); nine other *interim* orders allowing the Debtors (using the proceeds of the DIP financing) to pay such essential costs as employee wages, insurance premiums, taxes, and utilities; three administrative orders allowing for the employment of an agent to publicize information regarding the bankruptcy cases, allowing the joint administration of the Debtors' cases, and enforcing the Bankruptcy Code's automatic stay protections; and, lastly, an order setting a hearing on the disclosure

statement and plan confirmation.[3] Without such administrative and emergency relief at the first day hearing, the reorganizational goal of a chapter 11 case may be jeopardized before the case even gets started. *See Jevic*, 580 U.S. at 468 (endorsing common interim, first-day orders like "wage orders" and "'critical vendor' orders" that serve "significant Code-related objectives"). That was the case here, given the evidence at the first-day hearing that the Debtors were at risk of running out of cash within mere days if the DIP financing were not extended.

It was not a clear abuse of discretion nor clear error to enter emergency orders before rendering a final venue decision. For example, in *In re Houghton Mifflin Harcourt Publishing Co.*, the bankruptcy court entered extensive first-day relief—including approval of DIP financing—while a venue dispute was pending. 474 B.R. 122 (Bankr. S.D.N.Y. 2012). Even after finding venue improper, the court did not immediately transfer the case; it waited until after plan confirmation—the very end of the bankruptcy process—because "[d]elaying th[e] [plan] confirmation hearing would have been materially prejudicial to the interests of the creditors whose money here is on the line." *Id.* at 138; *see also Polymer80, Inc. v. Garland*, 2023 WL 3605430, at *5 (N.D. Tex. Mar. 19, 2023) (court is not required to resolve a venue motion before addressing emergency relief, and reserving question of venue to address "in due course"); *In re Caesars Ent. Operating Co., Inc.*, 2015 WL 495259,

---

[3]    Bankr. Dkt Nos. 84, 86-98.

at *3 (Bankr. D. Del. Feb. 2, 2015) (granting first-day motions pending a determination of venue).

As the *Houghton Mifflin* court explained, "[v]enue, even if improper, is not jurisdictional. While § 1406 [of the Judicial Code] mandates transfer or dismissal when statutory venue requirements have not been met, it does not dictate *when* the transfer must take place, nor does it foreclose steps in the interim to protect the creditors who might be harmed thereby." 474 B.R. at 125. It is therefore commonplace for bankruptcy courts to enter orders—especially to address emergencies—while determining venue disputes later in a bankruptcy case. *See* Petition at 19 (citing *In re 700 Trust*, 2025 WL 77751 (Bankr. N.D. Fla. Jan. 10, 2025); *Thompson v. Greenwood*, 507 F.3d 416 (6th Cir. 2007)).[4]

This is consistent with the basic notion that venue does not equate to subject matter jurisdiction. Whereas jurisdiction concerns a court's "power to adjudicate," venue merely concerns convenience to the litigants. *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167–68 (1939). This Court has recognized as

---

[4]   The underlying dockets of these cases confirm this point:  in each, the venue hearing occurred weeks after the petition date, after key relief had already been entered.  *See In re 700 Trust*, No. 24-10230 (Bankr. N.D. Fla. Nov. 8, 2024), Docket Nos. 1, 6, 7, 56 (40 days between petition date and venue hearing; DIP and taxes orders entered in the meantime); *In re Thompson*, No. 04-29553 (Bankr. W.D. Tenn. June 21, 2004), Docket Nos. 1, 8, 13, 14 (57 days between petition date and venue hearing; debtor ordered to make payments to trustee in the meantime).

much. *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 n.7 (3d Cir. 1982) ("venue concerns not the authority of the court . . . but relates to the convenience of the litigants."); *accord Dunnigan v. Silverthorn*, 542 F. Supp. 32, 32 (E.D. Pa. 1982) (venue "is distinct from jurisdiction" and "concerns the locality of the lawsuit"); *Smith v. Konsak*, 230 F. Supp. 308, 309 (E.D. Pa. 1964) ("Venue unlike jurisdiction is a personal privilege . . . which can be waived.").

The distinction matters. A court without subject matter jurisdiction lacks authority to enter binding orders, and this defect cannot be waived. *E.g.*, *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 77 (1988); 13 Wright & Miller's Federal Practice and Procedure § 3522 (3d ed. Sep. 2025 update) ("parties cannot waive lack of subject matter jurisdiction"). If a court enters an order in the absence of jurisdiction, the order is void. *E.g.*, *George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 239 (3d Cir. 2024).

Venue is completely different. There is no requirement that venue be found to exist before a court takes any other action; nor are orders void *ab initio* if entered by a court later found to have been an improper venue. To the contrary, it is well recognized in this Court and elsewhere that any decision rendered by a court before a case is transferred for lack of venue, far from being void, "is the law of the case and should not be reconsidered except in unusual circumstances." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 170 (3d Cir. 1982); *see also In re Pharmacy*

*Benefit Managers Antitrust Litig.*, 582 F.3d 432, 442 (3d Cir. 2009) (holding that "if the transferor court is bound by the law of the case doctrine . . . , the transferee court must be similarly bound" and that "nothing in § 1407 suggests that Congress intended to confer more power on the transferee court than the transferor court would have had absent the transfer"); *In re LTL Mgmt., LLC*, 636 B.R. 610, 618 (Bankr. D.N.J. 2022) ("Transferee courts—although they are endowed with various statutory and inherent authorities to make decisions in a case—are without power to modify or vacate a transferor judge's order without adequate justification").

### C.   Section 364(e) of the Bankruptcy Code protects the DIP financing from vacatur.

The suggestion that vacatur must follow from a lack of venue is especially improper in the context of the post-petition financing and accompanying liens approved under section 364 of the Bankruptcy Code. Subsection (e) of that provision states:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364.

Congress enacted this provision precisely because lenders would be disincentivized to extend credit to bankrupt companies if their loans could be

unwound on appeal. As this Court has explained, section 364(e) "seek[s] to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction[.]"  *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 561 (3d Cir. 1994) (internal quotation and citation omitted).   This reflects the judgment that the systemic benefits of encouraging DIP lenders outweigh the costs of insulating such loans from reversal. *See In re Semcrude, L.P.*, 728 F.3d 314, 322 n.8 (3d Cir. 2013) (recognizing that the "Bankruptcy Code does forbid appellate review of certain un-stayed orders," including orders authorizing post-petition financing under section 364(e)).

The bankruptcy court found that the DIP lenders extended credit in good faith, and Petitioners did not contest this. They failed, however, to seek a stay pending appeal. This means that the post-petition credit the lenders have extended, as well as the liens securing that credit, are insulated from any reversal or modification— whether on appeal or through some later request to overcome the law of the case in a transferee court. *See Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir. 1990) (reasoning that although section 364(e) did not by its express terms apply to the order, it nonetheless did apply through the law of the case doctrine and rendered the bankruptcy court without "power to undo the

priority granted by a financing order without first finding that the creditor acted in bad faith"); *In re N. Atl. Millwork Corp.*, 155 B.R. 271, 281 (Bankr. D. Mass. 1993) (following *Kham* and noting that a borrowing order and sale order "cannot and should not be modified"). Yet that appears to be what Petitioners seek when they argue that vacatur must be the appropriate remedy if venue is lacking. Whether framed as a venue objection, a mandamus petition, or anything else, the Bankruptcy Code protects good-faith DIP lenders from having their loans and security interests unwound. *In re Boy Scouts of Am.*, 137 F.4th 126, 149 (3d Cir. 2025) (recognizing, in the context of a parallel provision, that by "restricting appeals for this narrow category of appeals, Congress chose 'to promote the policy of . . . finality'" (citation omitted)).

## II.    Adequate alternative remedies exist.

The second requirement for mandamus, that there are no other alternatives to obtain the relief sought, "emanates from the final judgment rule: mandamus must not be used as a mere substitute for appeal." *In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 418 F.3d 372, 379 (3d Cir. 2005) (citation omitted).  "An appellate court's overuse of the writ to review interlocutory district court decisions would undermine the Congressional policy against piecemeal appeals." *In re Briscoe*, 448 F. 3d 201, 212 (3d Cir. 2006).  This Court has recognized that a party "cannot claim the lack of other means

to relief if an appeal taken in due course after entry of a final judgment would provide an adequate alternative to review by mandamus." *Id.*

Petitioners fail this requirement, too. The bankruptcy court already has set a hearing "to resolve venue" (A.II.A428-29), which will occur in just six days. This is well before the hearing to confirm the Debtors' chapter 11 plan or to grant their DIP motion on a final basis. There is plainly no reason for this Court to grant an extraordinary writ before the bankruptcy court has even made a final determination about venue.

Mandamus may be appropriate in some circumstances where a lower court refuses to redress a venue problem. *See, e.g.*, *In re Apple Inc.*, 2023 WL 2359699, at *1 (Fed. Cir. Mar. 6, 2023) (granting mandamus "to correct a clearly arbitrary *refusal* to act on a *longstanding* pending transfer motion" (emphasis added; quotation omitted)). But the bankruptcy court here has not refused to act. It is giving Petitioners the procedure they desire: a hearing to determine venue on February 26, a mere three weeks after the first-day hearing, following full briefing and discovery. Even where circuit courts have questioned venue determinations in ruling on mandamus petitions, they have expressed a clear preference for letting the trial court develop a full record and conduct a complete venue analysis. *See In re Media Matters for America*, 143 F.4th 631 (5th Cir. 2025) (granting mandamus in part, and vacating denial of venue transfer, and remanding for more complete venue analysis rather

than ordering an outright transfer to California); *U.S. Rubber Co. v. Frankel*, 1966 WL 7659 (2d Cir. 1966) (denying mandamus but recommending that the district court develop a plan for discovery to promptly resolve the deferred venue issue).

At the February 26 hearing, that is exactly what will happen. The bankruptcy court will hear evidence and argument and make an informed decision about how to resolve the venue dispute. If the bankruptcy court determines that venue is improper, it can transfer the cases as Petitioners request. Petitioners then can apply to the transferee court for whatever relief may be available under the law from the already-entered orders. If, on the other hand, the bankruptcy court determines venue is proper, Petitioners can then seek whatever ordinary appellate relief is appropriate at the time, with the appellate court having the benefit of a conclusive venue determination, based on a full record. *E.g.*, *Def. Distributed v. Att'y Gen.*, No. 23-3058, 2026 WL 394269, at *4-6 (3d Cir. Feb. 12, 2026) (reviewing venue and transfer decision after final judgment through ordinary appellate process). A party's claim to venue, "while not perfectly secured by appeal after final judgment, is *adequately vindicable* at that stage." *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 501 (1989) (emphasis added). Petitioners have a clear path forward to achieve the relief they seek without mandamus from this Court at this early juncture. *In re Kensington Int'l Ltd.*, 353 F.3d 211, 219 (3d Cir. 2003) ("If, in effect, an appeal will lie, mandamus will not.").

Petitioners' request for mandamus is remarkable for how premature it is. They point to no case preemptively granting mandamus relief where the trial court has expeditiously moved to resolve a venue dispute and has not even conducted its evidentiary hearing yet. The cases they do cite are irrelevant. Several involved situations where the trial court had already heard and denied a venue-transfer motion—something that has not occurred in these bankruptcy cases to date. *See In re 3M Co.*, 2020 WL 13924735, at *1 (3d Cir. Nov. 18, 2020) (non-precedential) (reviewing denial of transfer motion); *In re TikTok, Inc.*, 85 F.4th 352, 357 (5th Cir. 2023) (same); *In re Chamber of Commerce*, 105 F.4th 297, 301-02 (5th Cir. 2024) (same). Others are even further afield. *See In re Ryze Claims Solutions, LLC*, 968 F.3d 701, 705-06 (7th Cir. 2020) (granting mandamus where district court re-transferred a case in violation of a forum selection clause); *In re Hall*, 988 F.3d 376, 379 (7th Cir. 2021) (granting mandamus to correct district court's plainly erroneous abdication of habeas jurisdiction); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017) (considering whether 28 U.S.C. § 1391's definition of "residence" implicitly modified the patent venue statute's term "resides").

## III.   Petitioners cannot demonstrate irreparable injury.

The third essential requirement of mandamus relief is a showing that the trial court's error would "cause irreparable injury" to the petitioner "if it goes uncorrected." *Dawsey v. Gov't of Virgin Islands*, 931 F. Supp. 397, 401 (D.V.I.

1996), *aff'd*, 106 F.3d 384 (3d Cir. 1996). Petitioners cannot demonstrate that they will be harmed at all, let alone irreparably, if the writ is denied. All that will happen to them is they will be required to litigate in New Jersey, a location where they have demonstrated they are perfectly capable of making themselves heard.

In conducting an irreparable harm analysis, it should not be lost on the Court that Petitioners had no problem with these chapter 11 cases moving forward in New Jersey when they proposed their own alternative DIP financing. In their documentation for that proposal, they expressed that they were prepared to stipulate to proper venue in that forum, and to waive all venue-related objections. *See* Bankr. Dkt. No. 78, Ex. 1. That should be conclusive evidence that there is no irreparable harm to Petitioners based on the *location* of the bankruptcy cases. Their real gripe is with the outcome of the DIP motion. They engaged in a competitive process for providing post-petition financing to the Debtors; their financing proposal was rejected; and they do not like the proposal that was accepted and presented to the bankruptcy court instead.

Petitioners have never articulated any form of prejudice. Once their financing proposal was rejected, they expressed a desire to lay venue in the District of Delaware, a mere 62 miles away in Wilmington. This further belies that they are suffering any form of injury based on the need to travel some distance to court. Petitioners betrayed their real motivation for their venue objection in argument

before the bankruptcy court: they conceded that they prefer Delaware because a single bankruptcy judge once made a comment at a hearing about DIP financings that Petitioners believe will be useful to their objection to the DIP motion here. In other words, Petitioners want to judge-shop. But not having one's preferred judge is not irreparable harm.

By contrast, granting the writ would inflict grave harm to the Debtors' estates and their stakeholders. The Debtors have already drawn on the DIP facility to fund payroll, pay vendors, and maintain operations in reliance on the bankruptcy court's DIP order. This has been critical in demonstrating to customers, vendors, and other constituencies that the Debtors are on the path to a successful reorganization. Granting relief to Petitioners—especially their desired relief of vacatur—will cause massive uncertainty, threatening an already unstable business and possibly dooming the Debtors to liquidation. The balance of harms here is not even close.

## IV.    The Court should exercise its discretion to deny the petition.

Finally, even if a petitioner meets the three-pronged standard for mandamus, relief still remains within the "broad discretion" of the Court. *Abbott Lab'ys*, 96 F.4th at 379. For all the reasons above, the Court should deny the writ: the petition is premature, seeks relief that is barred by the Bankruptcy Code, and is unnecessary in the face of other available remedies and the absence of irreparable harm. Granting

the writ, by contrast, will cause extensive harm to an already-fragile business trying to reorganize in bankruptcy.

## <u>CONCLUSION</u>

For the reasons herein, the petition for a writ of mandamus should be denied.


Dated: February 20, 2026.

*/s/ Matthew E. Beck*

Matthew E. Beck
Thomas M. Walsh
Sam Della Fera, Jr.
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 325-1500
mbeck@csglaw.com
twalsh@csglaw.com
sdellafera@csglaw.com

Evan R. Fleck
Matthew Brod
Alexander B. Lees
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
(212) 530-5000
efleck@milbank.com
mbrod@milbank.com
alees@milbank.com

Colleen E. Roh Sinzdak
Melanie Westover Yanez
Hannah A. Blazek
**MILBANK LLP**
1101 New York Avenue, NW
Washington, DC 20005
(202) 835-7500
crohsinzdak@milbank.com
mwyanez@milbank.com
hblazek@milbank.com

*Counsel for the Secured Ad Hoc Group*

## <u>CERTIFICATION OF ADMISSION TO BAR</u>

I, Matthew E. Beck, certify as follows:

1.  I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.  Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: February 20, 2026

By: _/s/ Matthew E. Beck_____
Matthew E. Beck, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 21(d)(1). This brief contains 5,505 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2019 version of Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: February 20, 2026

By: */s/ Matthew E. Beck*
     Matthew E. Beck, Esq.

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I certify that on this 20th day of February 2026, the foregoing Brief was electronically filed with the Clerk of Court using the CM/ECF system.

I caused a true and correct copy of the foregoing Brief to be served on all counsel of record via the Court's CM/ECF system. and via email to all parties listed on the Debtors' master service list maintained by the Debtors' noticing agent at https://www.veritaglobal.net/mcc/document/noticelist/1.

The Bankruptcy Court is being provided with a paper copy of this filing by United Parcel Service overnight delivery to the Chambers of Hon. Michael B. Kaplan, U.S. Bankruptcy Court, District of New Jersey, 402 East State Street, Trenton, NJ 08608.

Dated: February 20, 2026

By: */s/ Matthew E. Beck*
        Matthew E. Beck, Esq.