## No. 26-01312

### In the United States Court of Appeals for the Third Circuit

In Re: Cross-Holder Ad Hoc Group & Excluded First Lien Lenders,

*Petitioners.*

On Petition for a Writ of Mandamus to the Bankruptcy Court for the District of New Jersey in No. 26-10910-MBK, Hon. Michael B. Kaplan

## DEBTORS' RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Michael D. Sirota, Esq.
*Counsel of Record*
COLE SCHOTZ P.C.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to this Court's order entered on February 19, 2026, the Debtors (defined herein) filed their Disclosure Statement on February 20, 2026, [3d Cir. Dkt. No. 12, Case 26-1312]. Debtors reiterate their disclosures below, pursuant to Rule 26.1 and Third Circuit LAR 26.1:

Debtor Multi-Color Corporation is a subsidiary of LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Collotype International Holdings Pty Limited is a subsidiary of Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Cunamara Investments Pty Limited is a subsidiary of MCC Labels Australia Pty Ltd; MCC Labels Australia Holdings Pty Ltd; Collotype International Holdings Pty Ltd; Multi-Color Australia

i

Holdings Pty. Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Exportaciones IM -Promocion, S.A. de C.V. is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Grafo Regia, S. de R.L. de C.V. is a subsidiary of GPC III Packaging Holdings Mexico S. de R. L. de C.V.; GPC III B.V.; Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Hally Group Pty Limited is a subsidiary of Collotype International Holdings Pty Ltd; Multi-Color Australia Holdings Pty. Ltd;

Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Hally Labels Pty Limited is a subsidiary of Hally Group Pty Ltd; Collotype International Holdings Pty Ltd; Multi-Color Australia Holdings Pty. Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Hexagon Holdings Limited is a subsidiary of Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Kiwi Labels Limited is a subsidiary of Hexagon Holdings Limited; Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Labels Buyer, LLC does not have a parent that is a corporation, and no publicly held corporation directly owns 10% or more of its equity.

Debtor LABL Acquisition Corporation is a subsidiary of LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor LABL Holding Corporation is a subsidiary of Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor LABL, Inc. is a subsidiary of LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation;

and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor LABL Intermediate Holding Corporation is a subsidiary of LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Ablis France SAS is a subsidiary of MCC France F&B SAS; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Adelaide Pty Limited is a subsidiary of Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Albany Limited is a subsidiary of Hexagon Holdings Limited; Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Auckland Limited is a subsidiary of Hexagon Holdings Limited; Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Cardiff Ltd. is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Christchurch Limited is a subsidiary of Hexagon Holdings Limited; Multi-Color (New Zealand) Holdings Pty Limited;

Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC France EST SAS is a subsidiary of MCC France F&B SAS; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC France Ouest SAS, is a subsidiary of MCC France F&B SAS; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Griffith Pty Ltd is a subsidiary of Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Label Sydney Pty Ltd is a subsidiary of Hally Labels Pty Limited; Hally Group Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Labels Australia Holdings Pty Ltd is a subsidiary of Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color

Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Labels Australia Pty Ltd is a subsidiary of MCC Labels Australia Holdings Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Manufacturing, Inc. is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Melbourne Pty Ltd is a subsidiary of Cunamara Investments Pty Limited; MCC Labels Australia Pty Ltd; MCC Labels

Australia Holdings Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Nantes France SAS is a subsidiary of MCC France F&B SAS; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH, Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Perth Pty Ltd is a subsidiary of MCC Adelaide Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding

Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Poznan Sp. z o.o. is a subsidiary of MCC Verstraete N.V.; Haendler & Natermann Benelux SPRL/BVBA; Multi-Color Heiligenstadt Germany GmbH; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Smart Packaging Solutions, LLC is a subsidiary of MCC Manufacturing, Inc.; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Verstraete Australia Pty Ltd is a subsidiary of Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation;

LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Verstraete In Mold Labels USA Inc. is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Verstraete N.V. is a subsidiary of Haendler & Natermann Benelux SPRL/BVBA; Multi-Color Heiligenstadt; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC-Norwood, LLC is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and

Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color (New Zealand) Holdings Pty Limited is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color (New Zealand) Pty Limited is a subsidiary of Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color (QLD) Pty Ltd is a subsidiary of MCC Label Sydney Pty Ltd; Hally Labels Pty Limited; Hally Group Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation;

and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Australia Acquisition Pty. Limited is a subsidiary of Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Australia Holdings Pty. Limited is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Bingen Germany GmbH is a subsidiary of Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Canada, Inc. is a subsidiary of MCC Manufacturing, Inc.; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Clydebank Scotland Limited is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Cwmbran UK Limited is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Daventry England Ltd is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding

Corporation; LABL Holding Corporation; and Labels Buyer, LLC and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Hann. Muenden Germany GmbH is a subsidiary of Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Heiligenstadt Germany GmbH is a subsidiary of Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Label Corporation-Mexico, S.A. de C.V. is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and

Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Labels Castlebar Ireland Limited is a subsidiary of Multi-Color Labels Ireland Limited; Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Labels Ireland Limited is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Montreal Canada Corporation is a subsidiary of Multi-Color Canada, Inc.; MCC Manufacturing, Inc.; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color UK Holdings 2 Limited is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Warsaw Poland Sp. z o.o. is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Spear Group Holdings Limited is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor W/S Packaging Group, LLC is a subsidiary of MCC Manufacturing, Inc.; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation;

LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

The 20 largest unsecured creditors in the Debtors' Chapter 11 cases are:  (i) Wilmington Trust, National Association, as Trustee; (ii) Avery Dennison Corp; (iii) INX International Ink Co.; (iv) Sappi; (v) Mitsubishi Corporation; (vi) Sun Chemical Corp.; (vii) Innovia Films; (viii) UPM-Kymmene Oyjz; (ix) Green Bay Packaging; (x) Bain & Company, Inc.; (xi) Siegwerk Druckfarben AG & Co. KGaA; (xii) Redwood-Levantor Sales Finance; (xiii) YUPO Corporation; (xiv) Mark Andy, Inc.; (xv) Microworks America Inc.; (xvi) Taghleef Industries LLC; (xvii) Heidelberg Materials; (xviii) Uber Freight US; (xix) Flint Group; and (xx) Inteplast Group Corporation.

Other active participants in the Debtors' Chapter 11 cases are:  (i) Clayton, Dubilier & Rice, LLC, together with certain of its Affiliates that are party to the Restructuring Support Agreement; (ii) Anchorage Capital Advisors, L.P.; (iii) Apollo Capital Management, L.P.; (iv) Ares Management LLC; (v) Arini Capital Management Limited; (vi) Benefit

Street Partners L.L.C. / Alcentra Limited; (vii) Blackrock Financial Management, Inc.; (viii) J.P. Morgan Investment Management Inc. or JPMorgan Chase Bank, N.A.; (ix) KKR Credit Advisors (US) LLC; (x) Lord, Abbett & Co. LLC; (xi) Principal Global Investors, LLC; and (xii) Barclays Bank PLC.

# TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ........................................................................1

INTRODUCTION ...........................................................................1

STATEMENT OF THE CASE ..........................................................5

      A.    The Debtors File for Chapter 11 Relief........................5

      B.    The Bankruptcy Court Enters the DIP Order and Schedules an Evidentiary Hearing.............................6

      C.    The Petitioners Collaterally Attack the DIP Order................10

ARGUMENT ...............................................................................12

I.    THE BANKRUPTCY COURT HAS NOT COMMITTED A LEGAL ERROR OR ABUSED ITS DISCRETION. ..........................12

II.    THE PETITIONERS ARE CURRENTLY PURSUING MULTIPLE ALTERNATIVE FORMS OF ADEQUATE RELIEF, IN ADDITION TO MANDAMUS. ......................18

III.    THE PETITIONERS HAVE NOT SHOWN A LIKELIHOOD OF IRREPARABLE INJURY ...............................................21

CONCLUSION ...........................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bankers Life & Cas. Co. v. Holland,*
346 U.S. 379 (1953)................................................................22

*In re Blagg,*
223 B.R. 795 (10th Cir. B.A.P. 1998), *aff'd*, 43 F. App'x
266 (10th Cir. 2002) ...............................................................16

*In re Cohn,*
54 F.3d 1108 (3d Cir. 1995) ................................................15

*Crayola, LLC v. Buckley,*
179 F. Supp. 3d 473 (E.D. Pa. 2016)....................................15

*Dae Sub Choi v. Sushi Maru Express Corp.,*
2018 WL 1087505 (D.N.J. Feb. 27, 2018)............................24

*In re Emerson Radio Corp.,*
52 F.3d 50 (3d Cir. 1995) .....................................................20

*In re Ezell,*
678 F. App'x. 430 (7th Cir. 2017).........................................18

*Hahnemann Univ. Hosp. v. Edgar,*
74 F.3d 456 (3d Cir. 1996) ...................................................20

*In re Hall,*
988 F.3d 376 (7th Cir. 2021).................................................21

*Hayman Cash Register Co. v. Sarokin,*
669 F.2d 162 (3d Cir. 1982) .................................................25

*Heckler v. Ringer,*
466 U.S. 602 (1984)...............................................................21

*In re Houghton Mifflin Harcourt Pub. Co.,*
474 B.R. 122 (S.D.N.Y. 2012) .............................................16

*In re Howmedica Osteonics Corp.*,
   867 F.3d 390 (3d Cir. 2017) ........................................................ 3, 12

*In re HTC Corp.*,
   889 F.3d 1349 (Fed. Cir. 2018) ...................................................... 22

*Kerr v. U.S. Dist. Court for N. Dist. of Cal.*,
   426 U.S. 394 (1976) ...................................................................... 1, 12

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*,
   337 F.3d 314 (3d Cir. 2003) ............................................................ 23

*Leroy v. Great W. United Corp.*,
   443 U.S. 173 (1979) ........................................................................ 14

*In re Nat'l Presto Indus., Inc.*,
   347 F.3d 662 (7th Cir. 2003) .......................................................... 21

*Plata v. Schwarzenegger*,
   560 F.3d 976 (9th Cir. 2009) .......................................................... 18

*Reading Health Sys. v. Bear Stearns & Co.*,
   900 F.3d 87 (3d Cir. 2018) .............................................................. 22

*In re Ross*,
   602 F.2d 604 (3d Cir. 1979) ............................................................ 15

*Salovaara v. Jackson Nat. Life Ins. Co.*,
   246 F.3d 289 (3d Cir. 2001) ............................................................ 24

*Semper v. Gomez*,
   747 F.3d 229 (3d Cir. 2014) ............................................................ 20

*In re Syed I. Raza*,
   129 F. App'x 739 (3d Cir. 2005) ................................................ 19, 20

*Thompson v. Greenwood*,
   507 F.3d 416 (6th Cir. 2007) .......................................................... 16

*In re Whittaker Clark & Daniels Inc*,
   152 F.4th 432 (3d Cir. 2025) .......................................................... 14

*Will v. United States,*
   389 U.S. 90 (1967) ........................................................................ 1, 11

*In re Wood,*
   2022 WL 2885294 (Bankr. W.D. Mo. May 25, 2022) ......................... 16

**Statutes**

11 U.S.C. § 364(e) ............................................................................... 25

28 U.S.C. § 158(d) ............................................................................... 10

28 U.S.C. § 1361 .................................................................................. 20

28 U.S.C. § 1408 .................................................................................... 5

**Rules**

Federal Rule of Bankruptcy Procedure 8006 ......................................... 10

## ISSUE PRESENTED

Where the Bankruptcy Court has not issued a final ruling on Petitioners' pending motion to dismiss or transfer for lack of venue, and instead ordered the parties to complete venue-related discovery and set a briefing schedule and hearing on the motion, (i) was the Bankruptcy Court required to hold an evidentiary hearing and permanently decide the venue challenge before granting critical first-day relief, and (ii) is mandamus relief appropriate where the Bankruptcy Court has not committed legal error and Petitioners are pursuing alternate forms of relief and have not established irreparable harm?

## INTRODUCTION

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). It is properly invoked "only [in] exceptional circumstances amounting to a judicial 'usurpation of power.'" *Will v. United States*, 389 U.S. 90, 95 (1967). That extraordinary remedy is not warranted here for any number of reasons.

The Petition for Mandamus filed by the Cross-Holder Ad Hoc Group and Excluded First Lien Lenders ("Petitioners") essentially asks this Court to hold that the bankruptcy clearly erred in ruling that this

1

Chapter 11 proceeding is properly venued in the District of New Jersey.

But ***the bankruptcy court has not even decided that question***. To

the contrary, Petitioners filed a motion to dismiss or transfer for lack of

venue, Bankr. Dkt. No. 71-1 (the "<u>Venue Motion</u>"),[1] and as of the date of

this filing, the bankruptcy court has not ruled on that motion. Quite the

contrary: the bankruptcy court ordered discovery related to that factually

intensive issue—which remains ongoing—and it scheduled an

evidentiary hearing for February 26, 2026, with a decision to follow

thereafter. *See* A540 (Bankruptcy Court stating that "it may very well

be that at the end of the day, this Court finds improper venue").

Petitioners' request that this Court grant the extraordinary relief of

mandamus when the factual record is ***incomplete***, there is ***no ruling*** on

venue, and Petitioners may ***prevail*** on the venue issue is wholly

improper and indeed borderline frivolous.

Even if the Bankruptcy Court had already ruled on the Venue

Motion (it has not), Petitioners not only could ***but actually are***

appealing the Interim DIP Order—the order they claim is premised on

erroneous venue—to the District Court, and have identified improper

---

[1]   All "Dkt." citations herein refer to the Bankruptcy Court's docket entries.

venue as one of the issues in that appeal.  By their own actions, therefore, Petitioners demonstrate that an "alternate avenue for adequate relief" exists, further requiring denial of mandamus.  *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017).

Additionally, Petitioners' objection to venue is waived.  When submitting their competing DIP proposal, Petitioners expressly conceded that venue was proper in the District of New Jersey and also irrevocably and unconditionally waived any right to contest venue.

Quite apart from these fatal flaws, the Bankruptcy Court has not committed any legal error, much less the clear error needed for mandamus relief.  When Multi-Color Corporation ("MCC") and its affiliates (collectively, the "Debtors") filed for Chapter 11 relief on January 29, 2026, they lacked sufficient funds to continue operating their business for even one more *week*.  If emergence as a going concern was even going to be a possibility, it was imperative that the Debtors obtain first-day judicial relief allowing them to receive interim financing and pay critical vendors and employees.  Petitioners sought to thwart all of that by immediately objecting to venue, claiming in the Venue Motion that the chapter 11 petition filed by MCC-Norwood ("Norwood"), one of

the Debtors, did not sufficiently establish the District of New Jersey as a proper venue.  In response, the Debtors (i) highlighted the portion of the Norwood Petition in which the Debtors averred (under penalty of perjury) that venue was proper, and (ii) explained that this representation would be supported by sworn testimony confirming that Norwood's principal assets are two bank accounts located in New Jersey, thereby establishing venue.

Faced with, on the one hand, critical financing motions from the Debtors necessary for the business to stay afloat, and, on the other hand, a not-yet-briefed and factually-disputed venue question, the Bankruptcy Court (i) set briefing and a hearing on the Venue Motion, and (ii) addressed the time-sensitive financing issues before it, ultimately entering the Interim DIP Order (Dkt. 106).  In doing so, the Court stated that, based on the record currently before it (including the Debtors' sworn Norwood petition), it could not rule that venue in New Jersey was improper.  Nothing about that ruling is wrong, much less so obviously wrong as to warrant the extraordinary remedy of mandamus.

Finally, this dispute is effectively moot.  Petitioners' principal argument against venue in the District of New Jersey—repeatedly

asserted in its Petition here—is that Norwood's petition for Chapter 11
relief did not expressly identify the location of Norwood's principal assets.
But that Petition was subsequently amended, *see* Case 26-10909-MBK
Dkt. No. 6 (the "Amended Norwood Petition"), to redress the supposed
deficiency identified by Petitioners.  Because the entire premise of the
Venue Motion—and the Mandamus Petition—rests on the sufficiency of
a chapter 11 petition that was subsequently amended, there is no reason
whatsoever for this Court to grant any relief.  The Mandamus Petition
should be denied.

## STATEMENT OF THE CASE

### A.    The Debtors File for Chapter 11 Relief.

On January 29, 2026, the Debtors filed for relief in the District of
New Jersey under chapter 11 of the United States Bankruptcy Code.  In
accordance with 28 U.S.C. § 1408, venue for these cases is appropriate in
the District of New Jersey because the principal assets of Debtor
Norwood are cash funds held in two bank accounts located in New Jersey,
and these assets have been located within the district for the greater
portion of the 180-day period preceding the petition date.  For this reason,
the Norwood Petition properly noted in Field 11 that it "has had its

domicile, principal place of business, or principal assets in this district"
for the relevant period of time.  A145.

Although the Petitioners take issue with the fact that the Norwood
Petition did not specify that Norwood's principal assets were in a
different location than its principal place of business, the Amended
Norwood Petition expressly states that Norwood's principal assets are
located at 301 Sylvan Ave., Englewood Cliffs, NJ 07632.  Case 26-10909-
MBK Dkt. No. 6.

The remaining Debtors properly filed petitions in this district
because their affiliate (Norwood) properly filed its Petition in this
district.

## B.    The Bankruptcy Court Enters the DIP Order and Schedules an Evidentiary Hearing.

During the First Day Hearing, the Debtors sought customary first-
day relief from the Bankruptcy Court, including an interim order
granting the Debtors critical postpetition financing to fund these chapter
11 cases, pursuant to the *Debtors' Motion for Entry of Interim and Final
Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing,
(B) Use Cash Collateral, and (C) Grant Liens and Superpriority
Administrative Expense Claims, (II) Granting Adequate Protection to*

*Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* ("<u>DIP Motion</u>").  Dkt. Nos. 26, 31, 106.

Less than one hour before the First Day Hearing began, the Cross-Holder Ad Hoc Group filed its Venue Motion, arguing that the case should be dismissed or transferred because Norwood's Petition failed to establish venue in the District of New Jersey.  Dkt. No. 71-1 at 3.  When the First Day Hearing commenced, the Cross-Holder Ad Hoc Group raised its newly asserted venue objection but argued only that Norwood "has [other] assets" in addition to its two bank accounts in New Jersey.  Jan. 30, 2026 Hr'g Tr. at 21:18-24:14; 28:24-29:12; 30:19-31:1.  The Excluded First Lien Lenders joined the objection, and the U.S. Trustee reserved its rights to later contest venue.  *Id.* at 27:12-23 (Excluded Lenders); *id.* at 25:6-14 (U.S. Trustee).  The Petitioners further requested that the Bankruptcy Court decide whether venue was proper before entering any orders in the case, including the Interim DIP Order.  *Id.* at 23:21-23.

In response, the Debtors explained that Norwood's principal assets are in two bank accounts held at ConnectOne Bank in New Jersey, thus

situating Norwood's principal assets in the District of New Jersey and establishing proper venue. *Id.* at 28:4-21. The Debtors also stated that they would submit further evidence to the Bankruptcy Court in support of this assertion and in opposition to the Venue Motion. *Id.* at 28:14-16. Counsel for Petitioner Cross-Holder Ad Hoc Group conceded at the First Day Hearing that its venue objection involved questions of fact, stating, "we need to hear testimony, and [the Bankruptcy Court] has to see exhibits," *id.* 29:1-3, and further agreed, "We have to establish a factual record here. I want to establish a factual record here." *Id.* 29:10-12. On this record, a factual dispute concerning venue plainly existed, and the Bankruptcy Court determined that venue had been sufficiently established for purposes of proceeding with the emergent relief request at the First Day Hearing. *See* A538 ("What [the Bankruptcy Court] had in front of it was a petition signed under penalty of perjury in which the declarant swore that venue was proper. And, in fact, we had also representation by counsel that venue was bottomed on the principal assets of the company being located here in New Jersey.").

Turning to the issues before it, the Bankruptcy Court set an evidentiary hearing on the Venue Motion for February 25, 2026,[2] and instructed the parties to meet and confer regarding venue-related discovery. Feb. 2, 2026 Hr'g Tr. at 31:14-33:1. The Bankruptcy Court expressly stated that all parties' rights to challenge venue would be preserved, and the Court's orders would allow "ample time to consider where this case should be heard." *Id.* at 29:20-30:11. The Bankruptcy Court then proceeded to address the time-sensitive first-day issues before it—including the Debtors' request for DIP financing, which was necessary given that the Debtors did not have sufficient funds to continue operating in the ordinary course—while reserving the parties' rights with respect to venue. *Id.* at 30:12-15; 45:21 (explaining that Debtors "wouldn't make it next week" without DIP financing). As the Bankruptcy Court explained in a subsequent hearing, "to delay the consideration of the expedited first day matters would harm debtors, harm employees, trading partners, and transform a venue challenge into a weapon and a stalling tactic." A539.

---

[2] The hearing on the Venue Motion was subsequently moved to February 26, 2026, with the consent of the parties and the Court.

At the conclusion of the First Day Hearing, the Bankruptcy Court entered, among other things, the Interim DIP Order, which granted interim relief on the DIP Motion and provided the Debtors with access to cash urgently needed to sustain them until the second-day hearing.  Dkt. No. 106.  Although the Interim DIP Order contained a provisional finding that venue is proper, the Bankruptcy Court expressly included "the reservation of rights set forth by the Court during its ruling given at the continued hearing on February 2, 2026 with regard to the parties' rights to challenge and contest venue of this case."  *Id*. at 8.

### C.    The Petitioners Collaterally Attack the DIP Order.

At the conclusion of the First Day Hearing and before the Venue Motion could be briefed or decided, the Cross-Holder Ad Hoc Group asked the Bankruptcy Court to certify the Interim DIP Order for direct appeal to the Third Circuit pursuant to 28 U.S.C. § 158(d) and Federal Rule of Bankruptcy Procedure 8006, *id*. at 30:1-5, but the Bankruptcy Court declined to do so without further briefing and argument.  *Id*. at 30:6-9, 30:22-31:2.  On February 4, 2026, the Petitioners filed notices of appeal from the Interim DIP Order, Dkt. No. 107 (Cross-Holder Group) and Dkt. No. 120 (Excluded Lenders).  They also filed a joint request to certify the

Interim DIP Order for direct appeal to the Third Circuit (the "<u>Joint</u>
<u>Request</u>").

On February 10, 2026, after considering briefing and oral argument
from all parties, the Bankruptcy Court denied the Petitioners' Joint
Request. The court explained that it had not yet ruled on the Venue
Motion, instead having "deferred resolution" of the motion pending
further briefing and factual development. A541. Accordingly, the
Bankruptcy Court found that the Petitioners' grounds for certification to
the Third Circuit—namely, that the Bankruptcy Court had erred by
purportedly finding that venue was improper but nonetheless retaining
the case—were invalid. *Id.*

The Petitioners' appeal from Interim DIP Order to the District
Court remains pending, and the Petitioners have not made any request
that the District Court expedite that appeal. Simultaneously, the parties
are presently engaged in discovery on the Venue Motion—including the
production of documents and several depositions—and the Bankruptcy
Court will rule on that Motion after the parties complete all briefing and
the court conducts a hearing on the merits on February 26, 2026.
Notwithstanding the ongoing venue-related proceedings in both the

Bankruptcy Court and District Court, on February 13, 2026, the Petitioners also submitted the instant Mandamus Petition to this Court.

## ARGUMENT

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). As such, "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States*, 389 U.S. 90, 95 (1967). The petitioner must show "(1) a clear and indisputable abuse of discretion or error of law, (2) a lack of an alternate avenue for adequate relief, and (3) a likelihood of irreparable injury." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017) (citation modified). "Even when these requirements are met," the Court "may, in the exercise of [its] discretion, decline to issue a writ of mandamus when it is not 'appropriate under the circumstances.'" *Id*. The Petitioners fail to satisfy any of these conditions.

## I.    THE BANKRUPTCY COURT HAS NOT COMMITTED A LEGAL ERROR OR ABUSED ITS DISCRETION.

To begin, Petitioners' request for mandamus fails because the Bankruptcy Court did not legally err or abuse its discretion by deferring

a final decision on the disputed question of venue until the parties had fully briefed, argued, and presented evidence on the issue.

As a threshold matter, Petitioners fundamentally mischaracterize the Bankruptcy Court's ruling at the First Day Hearing and how the court approached the Petitioners' venue objections. The Bankruptcy Court did not issue a final ruling on venue, let alone a ruling that it would retain the case after finding that venue was improper in New Jersey. Instead, the court correctly recognized the Debtors had affirmed under oath in the Norwood Petition that venue was proper in New Jersey. As the Bankruptcy Court later explained, "at the time this Court heard the first day matters, what it had in front of it was a petition signed under penalty of perjury in which the declarant swore that venue was proper." A538.

Nonetheless, in light of the Venue Motion, the Bankruptcy Court acknowledged the parties could reserve all rights with respect to venue and held that it did not yet have sufficient information to dispositively rule on the Venue Motion. Accordingly, the Bankruptcy Court set a date in the future (prior to the second-day hearing) for the court to formally consider the Venue Motion after full briefing and development of a

factual record.  *Id.* at ¶¶ 7, 8.  In the Mandamus Petition, Petitioners

concede that the Bankruptcy Court did "not decid[e]" the Venue Motion.

Pet. at 2.  This deferral is reflected in the Interim DIP Order itself, which

"incorporates . . . the reservation of rights . . . with regard to parties' right

to challenge and contest venue of this case," without entering an order or

judgment on the Venue Motion.  Dkt. No. 106 at 8.  The Bankruptcy Court

further confirmed during the hearing on the Joint Request that it had

"defer[red] further consideration" on the Venue Motion.  A540.

Properly framed, the only legal issue as to which the Bankruptcy

Court could have erred is whether a bankruptcy court is **_required_** to hold

an evidentiary hearing and permanently decide a venue challenge before

granting critical first-day relief.  The answer to that is dictated by clear

Supreme Court and Third Circuit precedent, which confirm that venue

statutes are non-jurisdictional and thus do not impact a court's power to

hear a case and decide issues.  *In re Whittaker Clark & Daniels Inc*, 152

F.4th 432, 443 (3d Cir. 2025) (holding that even "an improperly filed

bankruptcy petition" filed without the requisite authority "does not strip

bankruptcy courts of subject matter jurisdiction"); *Leroy v. Great W.*

*United Corp.*, 443 U.S. 173, 180 (1979) ("[N]either personal jurisdiction

nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties.").

Even engaging with the issues as the Petitioners wrongly seek to frame them, Petitioners ignore that venue is fundamentally a factual question. *See Crayola, LLC v. Buckley*, 179 F. Supp. 3d 473, 478 (E.D. Pa. 2016) ("Venue determinations are fact-intensive."). The Bankruptcy Court made an initial determination that venue was proper based on the sworn statement in the Norwood Petition, while reserving for a later date a fulsome hearing on facts outside the face of the Norwood Petition. Petitioners thus ask this Court to review the legal implications of a finding that venue is improper *before* the Bankruptcy Court has developed a full factual record, let alone made a final factual determination. Such an issue is not ripe for appeal, much less for mandamus relief. *See, e.g.*, *In re Cohn*, 54 F.3d 1108, 1118 (3d Cir. 1995) ("We have consistently deferred to the fact-finding duties of the bankruptcy court and have held that where sufficient facts have not been developed by that court, the proper response is to remand."); *In re Ross*,

602 F.2d 604, 608 (3d Cir. 1979) (remanding case to bankruptcy court because factual ruling "should be made in the first instance by the bankruptcy judge after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law").

The cases Petitioners cite similarly confirm that a factual issue should be fully briefed and decided by the Bankruptcy Court before the issue is ripe for appellate review. *See, e.g.*, *Thompson v. Greenwood*, 507 F.3d 416, 422 (6th Cir. 2007) (venue issue fully briefed in front of bankruptcy court before being appealed); *In re Blagg*, 223 B.R. 795, 803-04 (10th Cir. B.A.P. 1998), *aff'd*, 43 F. App'x 266, 267 (10th Cir. 2002) (same); *In re Houghton Mifflin Harcourt Pub. Co.*, 474 B.R. 122, 133 (S.D.N.Y. 2012) (same); *In re Wood*, 2022 WL 2885294, at *2 (Bankr. W.D. Mo. May 25, 2022) (fully briefed and ruled on by bankruptcy court).

In an attempt to evade this critical weakness in their Mandamus Petition, Petitioners argue that Norwood's claimed venue is "facially deficient," and that fact-finding is therefore unnecessary. Pet. at 3–4. But as noted above, this ignores the sworn statement in the Norwood Petition that venue is proper in New Jersey, and the Debtors' explanation

during the First Day Hearing that venue is proper because Norwood's principal assets reside in two bank accounts located in New Jersey. Jan 30 Hr'g Tr. at 28:3-16. At most, Petitioners identify a potential ambiguity in Norwood's Petition as to venue—an ambiguity that has subsequently been resolved by the filing of the Amended Norwood Petition. The necessity for further fact-finding is only confirmed by the substantial discovery—including document requests and three deposition notices—served on the Debtors by the Petitioners in the time since the First-Day Hearing. These factual issues will properly be resolved by the Bankruptcy Court through the already-scheduled hearing on February 26, after all parties have been given an opportunity to adduce and present full evidence and argument.

For these reasons, the Bankruptcy Court did not commit any legal error, much less the clear legal error necessary to warrant mandamus relief, and this Court should deny the Mandamus Petition for this reason alone.

## II. THE PETITIONERS ARE CURRENTLY PURSUING MULTIPLE ALTERNATIVE FORMS OF ADEQUATE RELIEF, IN ADDITION TO MANDAMUS.

This Court should also deny the Mandamus Petition because Petitioners are currently pursuing multiple alternative avenues for relief—including a ruling from the Bankruptcy Court on its Venue Motion and an appeal in the District Court. In pursuing these alternate avenues for relief, Petitioners tacitly acknowledge that there are other viable sources of relief available to them, and as a result, the extraordinary remedy of mandamus is clearly unwarranted.

To begin, Petitioners are actively participating in the Bankruptcy Court's briefing and discovery schedule on Petitioners' Venue Motion. The hearing on the Venue Motion will occur in less than a week, on February 26, 2026. The Bankruptcy Court has already stated that "it may very well be that at the end of the day, this Court finds improper venue." A540. The instant Mandamus Petition is therefore both premature and unnecessary. *See Plata v. Schwarzenegger*, 560 F.3d 976, 984 (9th Cir. 2009) ("It would be most inappropriate for this court to address those issues by the extraordinary writ of mandamus before the district court has dealt with them."); *In re Ezell*, 678 F. App'x. 430, 431

(7th Cir. 2017) ("[P]roceeding directly to mandamus without first asking the district court to perform its duty is irregular and blindsides the district judge.").  In short, the relief Petitioners prematurely seek from this Court may very well be granted by the Bankruptcy Court in less than a week.  And if the Bankruptcy Court denies the Venue Motion and/or approves the DIP on a final basis, Petitioners can, at that time, exercise any and all appropriate appellate rights from those orders.

In addition, the Petitioners are simultaneously pursuing an appeal of the Interim DIP Order to the District Court, asking the District Court to determine "[w]hether the Bankruptcy Court erred in finding that venue was appropriate for entry of the Interim DIP Financing Order" [Bankr. ECF No. 291 at 2]—the precise relief they also seek in their writ of Mandamus.  Petitioners are actively pursuing this appeal, most recently filing the issues disputed on appeal and designations of the record on appeal.  Dkt. Nos. 107 and 120 (notices of appeal), 260 and 291 (issues on appeal and designations of the record on appeal).  Notably, however—despite their perfunctory assertion of irreparable harm— Petitioners have not sought to expedite the proceedings pending before the District Court, nor have they sought a stay of the Interim DIP Order

from the Bankruptcy Court, the District Court, or the Third Circuit—

tacit acknowledgments that the typical appeals process is more than

adequate and the extraordinary relief of mandamus is not warranted. *In

re Syed I. Raza*, 129 F. App'x 739, 740–41 (3d Cir. 2005) ("mandamus is

not to be used as a substitute for an appeal").

By making use of the ordinary appeal process to pursue relief on

the Interim DIP Order, the Petitioners further confirm that mandamus

is an unnecessary remedy.  It is black-letter law that mandamus "should

not be issued where relief may be obtained through an ordinary appeal."

*Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996).  Here,

Petitioners' own filings reflect that they seek the very same relief in the

instant Mandamus Petition as they do in their pending appeals at the

District Court.  Petitioners provide no explanation as to why the Court

should deviate from the established rule that mandamus will not issue

where a party can still rely on the ordinary appeals process. *See In re

Emerson Radio Corp.*, 52 F.3d 50, 55 (3d Cir. 1995) (collecting binding

authority standing for this proposition).

Further, "[t]he common-law writ of mandamus, as codified in 28

U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he

has exhausted all other avenues of relief," including seeking interlocutory appeal to the district court. *Semper v. Gomez*, 747 F.3d 229, 251 (3d Cir. 2014) (cleaned up). Here, Petitioners have appealed the Interim DIP Order to the District Court, and relief in that court has not yet been exhausted. Nor have Petitioners sought mandamus from the District Court. Petitioners thus have not yet "exhausted all other avenues of relief," and mandamus is inappropriate. *Id.* (citing *Heckler v. Ringer,* 466 U.S. 602, 616 (1984).

Accordingly, Petitioners fail to satisfy their high burden on another necessary element of the mandamus standard.

## III. THE PETITIONERS HAVE NOT SHOWN A LIKELIHOOD OF IRREPARABLE INJURY

Petitioners make only token allegations as to why they would suffer irreparable injury in the absence of mandamus. Their reliance on *In re Hall*, 988 F.3d 376, 377 (7th Cir. 2021) is inapposite. In that out-of-circuit case, the Seventh Circuit found that mandamus was an appropriate remedy where parties suffered an improper venue transfer *from* the correct district. And like many of the cases the Petitioners cite on irreparable injury, *Hall* involved review of a trial court's final decision on whether to transfer venue—a procedural stage that Petitioners concede

the Bankruptcy Court has not yet reached.  Pet. at 2; *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003) (reviewing denial of venue motion, and denying mandamus); *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 96 (3d Cir. 2018) (reviewing district court's ruling on venue motion).  Until the Bankruptcy Court rules on Petitioners' Venue Motion, any allegations of irreparable harm are premature.  Nor do Petitioners explain what irreparable harm this Court can prevent that the Bankruptcy Court or District Court could not prevent through their own ongoing review of the venue issue.

Although Petitioners suggest that they should not be forced to litigate this case in an improper venue before they can contest venue in the Third Circuit, "the Supreme Court rejected this same argument in *Bankers Life*, explaining that 'the extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial.'"  *In re HTC Corp.*, 889 F.3d 1349, 1352–54 (Fed. Cir. 2018) (cleaned up) (citing *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953) and collecting cases).

Additionally, Petitioners cannot establish irreparable harm because Petitioners have waived the right to contest venue—and should

be estopped from contesting it now—and this appeal is also moot. The Petitioners' competing DIP proposal they submitted to the Debtors stipulated that venue properly lies in the U.S. Bankruptcy Court for the District of New Jersey and further stipulated that the Bankruptcy Court would exercise jurisdiction with respect to the approval of that facility. Dkt. No. 74 (Commitment Letter). Specifically, the Commitment Letter for the competing DIP facility stated that "each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of the Chapter 11 Cases may be heard in the Bankruptcy Court." *Id*. at § 9, ¶ 3. It further states that Petitioners "irrevocably and unconditionally waive[d] any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in any inconvenient forum." *Id*. Having represented that venue is proper in the District of New Jersey and waived any right to contest venue in any proceeding, they should be estopped from contesting venue before this Court. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 319 (3d Cir. 2003) (holding that the doctrine of judicial estoppel prevents a

litigant from asserting a position that is inconsistent with a position previously asserted in a same or similar prior proceeding).

Further, the Mandamus Petition rests on the supposed facial deficiency of the Norwood Petition, and specifically, the fact that Norwood did not affirmatively state in the Norwood Petition where its principal assets were located. The Amended Norwood Petition moots this argument entirely, as it expressly states that Norwood's principal assets are located in the District of New Jersey. Case 26-10909-MBK Dkt. No. 6. "Where, as here, legal issues on appeal have been mooted by subsequent events, the appellate court lacks jurisdiction to grant the requested relief." *Salovaara v. Jackson Nat. Life Ins. Co.,* 246 F.3d 289, 296 (3d Cir. 2001) ("If events occur after the filing of a notice of appeal that moot the issues presented, then there is no remaining justiciable controversy. We do not have jurisdiction to hear a case that cannot affect the rights the appellant wishes to assert.").

Finally, Petitioners' true motives appear to be vacatur of the first-day orders. But even if there were improper venue (there is not), the orders entered by the Bankruptcy Court would stand. Courts routinely recognize that, unlike a finding of a lack of subject matter jurisdiction, a

subsequent finding that venue was improper does not render decisions issued by a court void. *See, e.g., Dae Sub Choi v. Sushi Maru Express Corp.*, 2018 WL 1087505, at *2 (D.N.J. Feb. 27, 2018) (applying law of the case doctrine to decisions rendered by transferor court and noting "the law of the case doctrine prevents one district court from reconsidering issues decided by another district court in the same action"); *see also Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165-66 (3d Cir. 1982) (enforcing the law of the case doctrine where venue was improper in transferor court).

With respect to the Interim DIP order, that general rule is only strengthened here by plain language of 11 U.S.C. § 364(e), which states that a "reversal or modification on appeal of" the approval of post-petition financing (like the Interim DIP Order) "does not affect the validity of any debt so incurred, or any priority or lien so granted," so long as such debt is extended "in good faith" unless such order is stayed pending appeal. As Petitioners have never sought a stay (from any court) of the Interim DIP Order, there is a separate and independent basis for refusing to vacate.

## <u>CONCLUSION</u>

For each of these reasons, the Mandamus Petition should be denied.


Dated:  February 20, 2026          <u>*/s/   Michael D. Sirota*</u>

                                   COLE SCHOTZ P.C.
                                   Michael D. Sirota, Esq.
                                   Court Plaza North, 25 Main Street
                                   Hackensack, New Jersey 07601
                                   Telephone: (201) 489-3000

                                   *Proposed Co-Counsel to the Debtors*
                                   *and Debtors in Possession*

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 5,051 words as determined by the word-counting feature of Microsoft Word 2016, excluding the parts that Fed. R. App. P. 32(f) exempts.

I certify that this brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman style typeface of 14 points or more, using Microsoft Word 2016.

I certify that this document complies with the electronic filing requirements of L.A.R. 31.1(c) because the text of this electronic brief is identical to the text of the paper copies and because the virus-detection program MalwareBytes was run on the file and no virus was detected.

I certify pursuant to L.A.R. 28.3(d) and 46.1(e) that I am a member in good standing of the bar of this Court.


Dated:  February 20, 2026          */s/   Michael D. Sirota*

COLE SCHOTZ P.C.
Michael D. Sirota, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601

Telephone: (201) 489-3000

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*